J-S52030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| S.E.D. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellee | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| G.D.M. | : | | |
| | : | | |
| Appellant | : | No. 53 EDA 2016 | |

Appeal from the Order Entered December 7, 2015 in
the Court of Common Pleas of Philadelphia County
Domestic Relations at No:  0C0513395

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:          **FILED NOVEMBER 18, 2016**

G.D.M. ("Mother") appeals from the order entered December 7, 2015, in the Court of Common Pleas of Philadelphia County, which awarded primary physical custody of her son, S.S.D. ("Child"), born in February of 2005, to his father, S.E.D. ("Father").  After careful review, we affirm.

On April 4, 2014, Father filed a petition to modify the parties' existing custody order, entered March 10, 2009.  Pursuant to that order, Mother exercised primary physical custody of Child, Father exercised partial physical custody, and both parents exercised shared legal custody.  Following a hearing on July 9, 2014, the trial court entered an interim order awarding

_____

[*] Retired Senior Judge assigned to the Superior Court.

Father primary physical custody and sole legal custody of Child, and awarding Mother partial physical custody when the parties agree. The court conducted further hearings on February 5, 2015, and August 17, 2015, after which it entered additional interim orders. The court's August 17, 2015 order expanded Mother's periods of partial physical custody to every other weekend.

Following a final hearing, on December 7, 2015, the court entered the order complained of on appeal, which it again described as an "interim order in the best interest of the child[.]"[1] Order, 12/7/15, at 1. Pursuant to this order, Father was awarded primary physical and sole legal custody of Child. Mother was awarded partial physical custody every other weekend from Friday at 6:00 p.m. until the start of school on Monday morning. Mother also was awarded partial physical custody following her noncustodial weekends from Monday after school until the start of school on Tuesday morning. Mother timely filed a notice of appeal on January 6, 2016, along with a concise statement of errors complained of on appeal.[2]

Mother now raises the following issue for our review: "Did the trial court abuse its discretion and commit an error of law in transferring legal

_____

[1] Mother was *pro se* during the hearing, while Father was represented by counsel.

[2] The trial court did not file an opinion in this matter, either accompanying the subject custody order, or in response to Mother's concise statement.

and physical custody without addressing each of the sixteen custody factors, either in open court on the record or in writing shortly thereafter?" Mother's Brief at 1 (unnecessary capitalization and suggested answer omitted).

Before reaching the merits of Mother's issue, we first must consider whether the December 7, 2015 custody order was appealable. "'[S]ince we lack jurisdiction over an unappealable order it is incumbent on us to determine, *sua sponte* when necessary, whether the appeal is taken from an appealable order.'" ***Gunn v. Automobile Ins. Co. of Hartford, Connecticut***, 971 A.2d 505, 508 (Pa. Super. 2009) (quoting ***Kulp v. Hrivnak***, 765 A.2d 796, 798 (Pa. Super. 2000)).

It is well-settled that, "[a]n appeal lies only from a final order, unless permitted by rule or statute." ***Stewart v. Foxworth***, 65 A.3d 468, 471 (Pa. Super. 2013). Generally, a final order is one that disposes of all claims and all parties. ***See*** Pa.R.A.P. 341(b). "[A] custody order will be considered final and appealable only if it is both: 1) entered after the court has completed its hearings on the merits; and 2) intended by the court to constitute a complete resolution of the custody claims pending between the parties." ***G.B. v. M.M.B.***, 670 A.2d 714, 720 (Pa. Super. 1996).

In this case, while the trial court described the custody order of December 7, 2015, as an "interim order," our review of the record does not reveal that the court intended to conduct any future custody proceedings. The court did not schedule any additional proceedings, nor did the court state during the final hearing that any additional proceedings would be

necessary. Further, the order appears to completely resolve the parties' custody dispute. We therefore conclude that the December 7, 2015 custody order is final and appealable, and we proceed to address the merits of Mother's claim.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether

- 4 -

there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

Here, Mother argues that the trial court abused its discretion by awarding primary physical custody of Child to Father without considering the Section 5328(a) factors. Mother's Brief at 3-4. Mother observes that the court did not file a written opinion explaining its custody decision, nor did the court set forth its analysis of the factors at the conclusion of the custody hearing on December 7, 2015. *Id.*

Mother is correct that trial courts must generally conduct an analysis of the Section 5328(a) factors when making any award of custody, and that failure to do so is an error of law. *See* 23 Pa.C.S.A. § 5328(a); *S.W.D.*, 96 A.3d at 401. However, it was not necessary for the trial court to consider the Section 5328(a) factors in the instant matter, as the record reveals that the court entered the subject custody order upon agreement by both parties. The following exchange took place during the hearing on December 7, 2015.

[Mother]: . . . . I would like more time with my son.

THE COURT: Have you discussed it with dad?

[Mother]: I didn't know I was allowed to.

THE COURT: Do you have a PFA?

[Mother]: No.

- 6 -

THE COURT: You can talk to him.

[Mother]: Okay. But is it his decision, like, I don't know?

THE COURT: Look, you know, the Court can't make all decisions in the life of the children that come to court. It would seem to be an easier way to do it as nature [*sic*] parents to come to an agreement to make it easier for everybody.

\*\*\*

THE COURT: . . . . What was the offer again?

[Father's counsel]: That [Child] go to be with mom every Monday night when she has him for the weekend, obviously, that additional Monday would follow the weekend. It would be a three day weekend and then on the off weekend she would still be with him for Monday nights.

THE COURT: Give it to me. It's every other weekend, when?

[Father's counsel]: Every other weekend from Friday to Monday.

THE COURT: Friday, what time?

[Father's counsel]: Friday at 6:00 p.m.? Is it 6:00 p.m.?

[Father]: Um-hum. Six o'clock.

[Father's counsel]: Six o'clock to Sunday at seven. I mean until Monday. It will be until Monday. Mom will drop him off at school on Monday morning. And then on the alternate week, mom can pick him up from school after school on Monday and he would spend the night on Monday night.

\*\*\*

THE COURT: You got that?

[Mother]: Yes.

THE COURT: Acceptable?

[Mother]: (Unresponsive)

THE COURT: Hello.

[Mother]: If that's what I can get, yes.

THE COURT: Well, that's what he's offering.

[Mother]: Okay.

(Brief Pause)

THE COURT: You know if you learn how to talk to him there's probably a whole lot more you can get. I don't know, but you have to talk to him.

[Mother]: I don't have a problem with talking to him. I just don't want to argue with him.

THE COURT: Well, I can't control your arguing only you two can so we'll draft up the new order to expand your rights.

[Father's counsel]: Thank you, Your Honor.

N.T., 12/7/15, at 8-12.

Thus, the record demonstrates that Mother agreed, albeit reluctantly, to the proposed custody schedule presented by Father's counsel. ***See*** Pa.R.C.P. No. 1915.7 ("If an agreement for custody is reached and the parties desire a consent order to be entered, they shall note their agreement upon the record or shall submit to the court a proposed order bearing the written consent of the parties or their counsel."). While Mother may file a petition seeking to modify the December 7, 2015 custody order in the best

interest of Child, she may not claim that the trial court erred by entering that order after she expressly consented to it in open court.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by entering the December 7, 2015 custody order without consideration of the Section 5328(a) factors. Accordingly, we affirm the court's order.

Order affirmed.

Judge Strassburger joins this memorandum.

President Judge Emeritus Ford Elliott files a dissenting memorandum statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016